UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-01642-RGK-SSx; 2:12-cv-03614-RGK-SSx; 2:12-cv-03615-RGK-SSx; 2:12-cv-03617-RGK-SSx; 2:12-cv-03619-RGK-SSx; 2:12-cv-03620-RGK-SSx; 2:12-cv-03621-RGK-SSx; 2:12-cv-03622-RGK-SSx; 2:12-cv-03623-RGK-SSx; 2:12-cv-04649-RGK-SSx; 2:12-cv-04650-RGK-SSx; 2:12-cv-04651-RGK-SSx; 2:12-cv-04652-RGK-SSx; 2:12-cv-04653-RGK-SSx; 2:12-cv-01647-RGK-SSx; 2:12-cv-04654-RGK-SSx; 8:12-cv-00652-RGK-SSx; 2:12-cv-04656-RGK-SSx; 2:12-cv-04657-RGK-SSx; 2:12-cv-04658-RGK-SSx; 2:12-cv-04660-RGK-SSx; 2:12-cv-04661-RGK-SSx; 2:12-cv-04662-RGK-SSx; 2:12-cv-05592-RGK-SSx; 2:12-cv-05593-RGK-SSx; 2:12-cv-05594-RGK-SSx; 2:12-cv-05595-RGK-SSx; 8:12-cv-00647-RGK-SSx; 8:12-cv-00649-RGK-SSx; 8:12-cv-00650-RGK-SSx; 8:12-cv-00651-RGK-SSx; 2:12-cv-05596-RGK-SSx | Date | October 10, 2012 |
| Title | MALIBU MEDIA LLC v. JOHN DOES 1-10 | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| S. Williams, Not Present | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) Order re: Plaintiff's Renewed Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference (DE 28, CV 12-01642) and Defendant John Doe No. 5 Motion to Sever (DE 32, CV 12-03614)**

## I.   INTRODUCTION

From February 27, 2012 to June 27, 2012, Plaintiff Malibu Media, LLC ("Plaintiff") filed thirty-three separate lawsuits against various groups of John Doe Defendants (collectively "Defendants") for claims of copyright infringement.[1] In each lawsuit, Plaintiff alleges that Defendants acting in concert together, used the BitTorrent protocol, an internet peer-to-peer file sharing network, to unlawfully reproduce and distribute Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.* Given the similarity of Plaintiff's

_____

[1] Case No. 2:12-cv-01675 is closed due to voluntary dismissal by Plaintiff.

allegations, the thirty-three cases were transferred to this Court. In its July 10, 2012 Case Management Order, the Court vacated any orders permitting Plaintiff leave to conduct early discovery to determine Defendants' identities.

Presently before the Court is Plaintiff's Renewed Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference. For the following reasons, the Court **DENIES** Plaintiff's Motion for Leave and **DISMISSES WITHOUT PREJUDICE** claims against all Defendants, except for individuals designated as "John Doe 1." The Court also **DENIES as moot** Defendant John Doe No. 5's Motion to Sever. (CV 12-03614-RGK at DE 32.)

## II.   <u>FACTUAL BACKGROUND</u>

The factual allegations in remaining thirty-two cases are essentially the same, except for variations in the named defendants and the infringed works. Plaintiff owns the copyrights to several adult films made available in various forms[2] through the BitTorrent protocol ("BitTorrent"). In early file- sharing programs, users would connect individually to each other or to a central repository to exchange files; BitTorrent differs as files are shared in a "swarm," where pieces of the whole file are distributed amongst different users.[3] This enables faster, more efficient sharing of large files by distributing the work of downloading and uploading files. To use the program, a user installs a BitTorrent "client" on his or her computer.

The process of exchanging files on BitTorrent begins with the "Initial Seeder," an individual user who has the original file, in this case an unauthorized copy of Plaintiff's works, that is listed on an index of files available through BitTorrent. Other users interested in the file will connect to BitTorrent and use a "tracker" to find and download the file from the Initial Seeder and other users. To facilitate faster downloading, BitTorrent breaks the file into smaller pieces, each of which is assigned an alphanumeric number unique to the original file, known as a "hash number."

BitTorrent rules dictate that once a user downloads a piece of the original file, that piece is immediately available for other users to download. At this point, the user is considered a "peer" and a part of the "swarm." Once a user has downloaded all of the file pieces, BitTorrent compares the hash number of each piece against that recorded in the original file to ensure that the reconstituted file is error-free and then, the file is reassembled. If the reconstituted file is error-free, the user becomes a new "seeder" and the reconstituted file is now a new "seed." Once a download is complete, a user may then disconnect or remain connected to continue seeding the file to other users.

The aggregate group of users (peers and seeders) who can share at least a piece of a particular file is called a "swarm." A BitTorrent "tracker" stores a list of all users within the swarm and facilitates the exchange of data when a new user seeks the particular file. The tracker directs a new user only to peers and seeders within the "swarm" that are connected to BitTorrent at the time of the request.

---

[2] In the majority of Plaintiff's cases, the downloaded and uploaded digital file is a "siterip" of an adult pornography website, containing several of Plaintiff's copyrighted films. Generally, a "siterip" is an unauthorized digital copy of a website and all of its contents, which allows a user to view the website's contents offline.

[3] For a further description of BitTorrent see *Malibu Media, LLC v. John Does 1-10,* No. 2:12-cv-3623-ODW, 2012 U.S. Dist. LEXIS 89286, at *2-4 (C.D. Cal. June 27, 2012), *vacated on other grounds by, Malibu Media, LLC, v. John Does 1-10,* No. 2:12-cv-01642-RGK (C.D. Cal. July 10, 2012).

Plaintiff contends that Defendants unlawfully downloaded and uploaded Plaintiff's copyrighted works using BitTorrent. In each case, Defendants allegedly shared the same digital copy of Plaintiff's works with the other named-defendants and participated in the same "swarm" at some point during a one to two-month period.

Upon discovering that its works were available through BitTorrent, Plaintiff hired IPP, Limited ("IPP") to identify the internet protocol ("IP") addresses associated with the infringing activity. IPP connected to BitTorrent and downloaded various pieces of files containing Plaintiff's works. In order to use BitTorrent, users are required to reveal their IP addresses to each other, and thus, by downloading these pieces, IPP identified IP addresses associated with the infringing activity, and the date and time of the alleged infringement. (Pl. Compl., Ex. A.) Internet service providers ("ISP"), such as Time Warner Cable, assign IP addresses to subscribers when they use the ISPs' internet services. Plaintiff now seeks leave to subpoena the ISPs to provide the subscriber information associated with the named Defendants' IP addresses.

## III.   **JUDICIAL STANDARD**

### 1.   **Early Discovery**

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." A court order for early discovery is issued only upon a showing of "good cause." *Hard Drive Prods., Inc. v. Does 1-90*, No. C 11-03825 HRL, 2012 WL 1094653, at *2 (N.D. Cal. Mar. 30, 2012) (citations omitted). To determine whether goods cause exists, courts consider whether: "(1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real entity that can be sued in federal court;" (2) the plaintiff has identified all prior steps taken to locate the defendant; (3) the lawsuit against defendant could withstand a motion to dismiss; and "(4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible." *Id.*

Generally, "the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). When a plaintiff does not know the defendant's identity at the time the complaint is filed, the Ninth Circuit provides that courts may grant leave for early discovery, "unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.* (finding that a plaintiff "should be given an opportunity through discovery to identify the unknown defendants" subject to certain exceptions); *Ingenuity13 LLC v. John Doe*, 12-cv-1843-MMA, 2012 WL 4108885, at *1 (S.D. Cal. Sept. 17, 2012). If early discovery would "very likely" disclose the identities of the "John Doe defendants," courts must grant the requested early discovery. *Id.*

### 2.   **Joinder**

Permissive joinder of defendants is proper if (A) any right to relief is asserted against the defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The proper remedy for misjoinder is to sever misjoined parties and dismiss claims against them, provided that "no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). The determination of joinder "lies within the discretion of the district

court." *Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1078 (C.D. Cal. 2002).

## IV.   DISCUSSION

In its Motion, Plaintiff makes two primary assertions: (1) it is entitled to early discovery to learn the identities of Defendants and (2) joinder of Defendants in each case is proper. For the following reasons, the Court disagrees and addresses each assertion in turn.

### 1.   Early Discovery

Where the defendants' identities are unknown and the plaintiff seeks early discovery, the threshold inquiry is "whether the requested early discovery is 'very likely' to reveal the identities of the Doe defendants." *Gillespie*, 629 F.2d at 642; *Hard Drive Prods. v. Does 1-90*, No. C 11-03825 HRL, 2012 WL 1094653, at *2 (N.D. Cal. Mar. 30, 2012). Plaintiff alleges "[b]ecause ISPs assign a unique IP address to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the information sought in the subpoena will enable Plaintiff to serve defendants and proceed with the case." (Pl's Mtn for Leave 4.)

Plaintiff's argument is unavailing, because the subscriber information is not a reliable indicator of the actual infringer's identity. Due to the proliferation of wireless internet and wireless-enabled mobile computing (laptops, smartphones, and tablet computers), it is commonplace for internet users to share the same internet connection, and thus, share the same IP address. Family members, roommates, employees, or guests may all share a single IP address and connect to BitTorrent. *AF Holdings LLC v. Does* 1-96, No. C 11-03335 JSC, 2011 WL 4502413, at *2-3 (N.D. Cal. Sept. 27, 2011); *Hard Drive Prods. v. Does 1-90*, No. C 11-03825 HRL, 2012 WL 1094653, at *2-3 (N.D. Cal. Mar. 30, 2012). If the subscriber has an unsecured network, it is possible that the actual infringer could be a complete stranger standing outside the subscriber's home, using the internet service and who's internet activity is being attributed to the unknowing subscriber's IP address. Thus, obtaining the subscriber information will only lead to the person paying for the internet service and not necessarily the actual infringer.

It is even more unlikely that early discovery will lead to the identities of Defendants given how commonplace internet usage outside one's home has become. An increasing number of entities offer publically-accessible internet service; consider coffee shops, workplaces, schools, and even cities. Mobile-computing allows internet users and copyright infringers, to connect to the internet in any such location. A given entity may have hundreds or thousands of users in a one to two-month period. Obtaining the subscriber information in these cases will only lead to name of the entity and is unlikely to yield any identifying information about the actual infringer. Accordingly, granting early discovery for the subscriber information is not very likely to reveal the identities of Defendants.

The Court also finds that Plaintiff fails to demonstrated good cause to warrant early discovery. Based on similar reasons discussed above, it is not even reasonably likely that early discovery will lead to Defendants' identities and service of process. *Hard Drive Prods.v. Does 1-90*, No. C 11-03825 HRL, 2012 WL 1094653, at *2-3 (N.D. Cal. Mar. 30, 2012) (noting that at the time of the motion hearing, 69 mass copyright infringement cases had been filed in the Northern District of California. The plaintiffs obtained early discovery in 57 cases to obtain subscriber information for 18,000 IP addresses. Yet, no defendant had been served in any of those cases.) Further, permitting early discovery in lawsuits involving pornography could have a prejudicial effect on innocent subscribers, rather than identifying the actual infringers. As one judge warned, "[t]his risk of false positives gives rise to 'the potential for coercing unjust

settlements from innocent defendants' such as individuals who want to avoid embarrassment of having their name publicly associated with allegations of illegally downloading" adult movies. *Digital Sin, Inc. v. Does 1-176* , 279 F.R.D. 239, 242 (S.D. N.Y. 2012) (citation omitted).

Based on the forgoing, Plaintiff fails to show that early discovery is very likely to reveal the identities of Defendants and fails to demonstrate good cause to warrant early discovery. Thus, the Court **DENIES** Plaintiff's Motion.

### 2. <u>Joinder</u>

The Court also finds permissive joinder of Defendants to be improper, because Plaintiff fails to satisfy the first prong of the permissive joinder test under Rule 20(a)(2). Plaintiff fails to demonstrate its claims arise from the same series of transactions or that Defendants acted in concert such that they are jointly or severally liable. Fed. R. Civ. P. 20(a)(2).

According to Plaintiff, Defendants infringed upon Plaintiff's works by uploading pieces of a file containing copyrighted works over a one to two-month period. This loose proximity of Defendants' alleged infringing activity does not show that Defendants are transactionally related. *Malibu Media, LLC v. John Does 1-10,* No. 2:12–cv–3623–ODW, 2012 U.S. Dist. LEXIS 89286, at *7-8 (C.D. Cal. June 27, 2012), *vacated on other grounds by*, *Malibu Media, LLC, v. John Does 1-10,* No. 2:12-cv-01642-RGK (C.D. Cal. July 10, 2012); *SBO Pictures, Inc. v. Does 1-57*, RWT 12-CV-22, 2012 WL 1415523, at *2 (D. Md. Apr. 20, 2012). Each Defendant's infringing activity occurred at different times, dates, and even from different locations. They also often used different internet service providers. Further, there is no indication that Defendants in each case had any knowledge of or direct contact with one another, nor does Plaintiff allege that pieces of the file were jointly downloaded from Defendants in the same transaction. These facts suggest that Defendants are not related for purposes of permissive joinder.

By contrast, Plaintiff argues its claims arise from the same series of transactions because Defendants acted together in the same "swarm" to download and upload the same copyrighted works. The Court disagrees. A "swarm" refers to a broad group of users who have downloaded at least a piece of a desired file and who new users can download from. Due to the nature of a swarm, each Defendant's infringing activity may never overlap with one another. *Third Degree Films*, *Inc. v. Does 1-131*, 280 F.R.D. 493, 498 (D. Ariz. 2012). A swarm is comprised of many users, possibly thousands of users. *Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011). A new user need not download pieces from every member within the swarm; they only need a subset of members to download a complete file. *Third Degree Films*, 280 F.R.D at 498. When sharing files, a user does "not choose which pieces are downloaded and uploaded (this is determined by the code in the torrent file), nor do they choose the peers to and from whom they send and receive pieces." *Hard Drive Prods., Inc. v. Does 1-90*, No. C 11-03825 HRL, 2012 WL 1094653, at *1 (N.D. Cal. Mar. 30, 2012). Accordingly, a user downloading a specific file several times, such as IPP, may never download the file from the same users from transaction to transaction. *Id*. Thus, being part of the same "swarm" is insufficient to show that Defendants acted in concert in a single transaction or in the same series of transactions.

In light of the forgoing, the only commonality between Defendants in each case is that they downloaded the same copyrighted works using BitTorrent, but this alone is insufficient to support permissive joinder. "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records, LLC v. Does 1-38*, 5:07-CV-298-BR, 2008 WL 544992, *2 (E.D. N.C. Feb. 27, 2008); *Hard Drive Prods.*, 809 F.

Supp. 2d at 1163; *see Coughlin*, 130 F.3d at 1350-51.

For all these reasons, Plaintiff fails to satisfy the first prong of the permissive joinder test and the Court declines to address the second prong. Even if permissive joinder existed, the Court exercises its discretion to sever Defendants from these lawsuits pursuant to Rule 21. Fed. R. Civ. P. 21. Given that it is likely that each Defendant will present individual facts and defenses, considerations of fairness and case management render discretionary severance to be appropriate. *Third Degree Films*, 280 F.R.D. at 298; *In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, at *11-12 (S.D. N.Y. May 1, 2012).

Therefore, the Court finds joinder of Defendants in the above-listed cases to be improper and severs all but the individual designated as "John Doe 1."

## V. <u>CONCLUSION</u>

In light of the forgoing, the Court **ORDERS** as follows:

1. Plaintiff's Renewed Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference is **DENIED**. (CV 12-01642, DE 28.)

2. Plaintiff's claims in the above-listed cases are **DISMISSED WITHOUT PREJUDICE** against all Defendants other than the individual designated as "John Doe 1" in each action.

3. Defendant John Doe No. 5's Motion to Sever All Does Other than John Doe 1 is **DENIED as moot**. (CV 12-03614-RGK, DE 32.)

   **IT IS SO ORDERED.**

_____ : _____

Initials of
Preparer                          _____